Hugh D. McCorkle, Appellant, v. E. J. Lessenger et al.,
Appellees.

**FRAUD:** Acts Constituting—Incredible Representations. The plea of
1   fraud in the execution of a promissory note is not necessarily de-
feated by the fact that the fraud was such that only a gullible per-
son would rely thereon.

**BILLS AND NOTES:** Holdership in Due Course—Evidence. Evidence
2   reviewed, and held to show that the holder of a promissory note
was not a holder in due course.

Headnote 1:   8 C. J. p. 786.   Headnote 2:   8 C. J. p. 1046.

*Appeal from Henry District Court.*—James D. Smyth, Judge.

November 17, 1925.

Suit in equity to foreclose a real estate mortgage, given as
security for the payment of two notes of $1,000 and $1,087.50,
respectively. The payee of the notes and the mortgagee was one
Truitt, who transferred the paper to the plaintiff before due.
The defense interposed was fraud in obtaining the notes, and a
rescission by the defendants. There was a decree for the de-
fendants, and the plaintiff appeals.—*Affirmed.*

*Galer & Galer,* for appellant.

*McCoid & McCoid,* for appellees.

Evans, J.—I. The defendants are husband and wife, the
husband being a physician in New London. The mortgage covers
their home. The notes and mortgage were given to one Truitt
1. Fraud: acts        in a very visionary speculation on their part.
constituting:          Truitt, a resident of St. Louis, appeared at New
incredible repre-
sentations.            London, purporting to have for sale shares of
stock in the Miller Train-Control Corporation. By various rep-
resentations made by Truitt and readily relied on by the de-
fendants, Truitt purported to sell to them 500 shares of such
stock at $5.00 per share. They made part payment in cash,

and for the residue gave the notes and mortgage in suit. This was on June 27, 1922. The paper passed into the hands of the plaintiff on July 1st following. On the trial, the defendants testified to the details of the transaction out of which the paper grew. Truitt was not called as a witness by either side. The testimony of the defendants was wholly undisputed. Such testimony is assailed here in the briefs of appellant on the ground that it was so unreasonable and improbable as to be incredible. We do not find it so. On the contrary, it carries the standard earmarks of gullibility, which have become very familiar to us in this class of cases, and which have long ago ceased to be incredible. A part of the artifice used by Truitt was that he represented the stock as selling in St. Louis at $7.00 a share; that he would sell to the principal defendant, as a friend (whom he had defrauded once before), for $5.00 a share, on one imperative condition, to be incorporated into the contract. This condition was that the purchaser should agree to sell back to Truitt, at the expiration of six months, one half of this stock at the rate of $5.00 per share, with 7 per cent added for interest and 60 per cent for profit. Such condition was incorporated into the contract with meticulous care. The stock in fact had no actual value, though it had a nominal value for the purpose of trading it to unsuspecting people. The notes executed by the defendants contained a provision whereby the corporate stock was to be held as collateral by the payee, and the recitals of the notes purported to attach such collateral to the notes. By this manner Truitt concealed the fact that he had no stock. None was in fact delivered to the defendants, and none was attached to the notes. Thereupon Truitt carried back to St. Louis the defendant's notes and mortgage, leaving no trace of the transaction in the hands of the defendants. Inasmuch as the testimony at this point is without dispute, we shall not go into further details of the original transaction. We deem it clear that the defendants have proved their defense of fraud as against Truitt, and we shall proceed to consider whether the plaintiff has shown himself to be a holder in due course.

II. Was plaintiff a holder in due course? The burden was upon him to prove it. He was a witness on the trial, and we look to his testimony alone upon this issue. He was a lawyer

2. BILLS AND NOTES: holdership in due course: evidence. in St. Louis, and was well acquainted with Truitt, who visited him often, and had various business transactions with him. In a letter written by him to the principal defendant, he wrote: "Truitt is a client of mine, and I am in close touch with Truitt." He was familiar with the Miller Train-Control stock, and knew that it had no actual value, other than a nominal value for speculative purposes. He had bought, for a comparative pittance, 3,000 shares thereof. Truitt had sold for him 1,100 shares of this stock. Truitt brought to the plaintiff the notes and mortgage in suit, and proposed to plaintiff that he furnish the 500 shares of stock necessary to comply with the contract of sale. The plaintiff knew that Truitt had no stock of his own, and knew that the makers of the paper had received as yet nothing therefor. The arrangement whereby Truitt transferred the paper to the plaintiff was, in substance, that the plaintiff borrowed sufficient funds at the bank to settle with Truitt, and put up 500 shares of the stock as collateral to his note at the bank, and paid $950 to Truitt, making an approximately equal division of the profits in the transaction between him and Truitt. The 500 shares of stock had cost the plaintiff $185, less than 60 days previously. This method of using the 500 shares of stock was treated by Truitt and the plaintiff as equivalent to furnishing the stock to these defendants. As a matter of fact, there was no apparent transfer of the stock in any manner to these defendants at any time, either by a writing on the certificates or by a transfer upon the books. The stock and the notes and mortgage were held at all times by the bank as collateral to the plaintiff's note. The defendants never received the stock, or any part thereof, nor any evidence of ownership of any particular shares. Upon such a state of facts alone, without pursuing further details, we deem it clear that the plaintiff was not a holder in due course, within the meaning of the law. It were more reasonable to say that he became an actual party to the fraud first perpetrated by Truitt.

The decree of the trial court is, accordingly, affirmed.—*Affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.